**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL ROWE,                    )
                               )
          Plaintiff,           )
                               )        No. 1:07-CV-272-CKJ
vs.                            )
                               )        **ORDER**
MONTOYA, et al.                )
                               )
          Defendants.          )
_____)

Pending before the Court is Plaintiff's Dispositive Motion [Doc. # 36] and Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies or, in the Alternative, for Summary Judgment [Doc. # 37].

*Factual and Procedural Background*

On February 20, 2007, Plaintiff Daniel Rowe ("Rowe") filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. On March 17, 2008, the court screened and dismissed the Complaint and granted Rowe 30 days to file an amended complaint. On April 4, 2008, Rowe filed a First Amended Complaint. On April 10, 2008, the court screened and dismissed the First Amended Complaint and granted Rowe 30 days to file a second amended complaint.

On May 5, 2008, Rowe filed a Second Amended Complaint ("SAC"). Rowe alleged that he was denied medical treatment on October 11, 2006, by Registered Nurse Montoya

("Montoya"). Rowe asserts that he had an appointment on that day for examination and refill of prescriptions. Rowe asserts that he was suffering from "difficult breathing, watery eyes, runny nose, [and] coughing." SAC, p. 4. Rowe alleges that he told Montoya his allergies "were in motion and [he] needed refills on [his] nasal spray and some more medication. Montoya told [Rowe] that [there] was nothing that she could do and sent [Rowe] back to [his] housing unit without any renewals." *Id.*, pp. 4-5. Rowe also alleged:

> Doctor T. Hasadsri is a doctor in medical at Corcoran State Prison, and had knowledge of myself, Daniel Rowe of having allerg[ies] , and my sufferings. Hasadsri had previously examined me and denied me treatment, Doctor Hasadsri had access to my medical records, and his view of my files documenting my medical conditions gave him the responsibility of my treatment and care. That involves Doctor T. Hasadsri as medical doctor at Corcoran State Prison.

*Id.*, pp. 5-6.

Rowe's October 11, 2006, Inmate/Parolee Appeal Form, as produced to Defendants in discovery, states:

> On October 11, 2006, [Rowe] appeared in doctor line on 4B yard medical clinic for my allergy concerns. RN Montoya, old lady with glasses, saw me and was very unprofessional. I told her that I was suffering allergy indications, water eyes, breaking out, itching, runny nose, sneezing, and stuffy nose, difficult to breath[e]. I told her I need a refill on my nasal. And that the pills I received didn't help. RN Montoya told me that it was nothing she could do. Prisoners rights by law states: prison officials see attac[hed.]

Declaration of Reager [Doc. # 38], Ex. A; *see also* Opposition, Ex. 3. The attachment has been provided by Rowe. *See* Opposition [Doc. #40], Ex. 3. Rowe's Ex. 3 includes a CDC 602. That form indicates that Rowe was interviewed by T. Hasadsri, M.D. ("Hasadsri"), on December 4, 2006. Hasadsri stated:

> It is the policy and procedure of CDCR that the I/M is seen by yard RN first (for a non life threatening condition). Today you refused to be examined by me.

Opposition [Doc. # 40], Ex. 3. The CDC 602 includes the following December 12, 2006, statement from Rowe:

> California Prisoners Handbook 7.2 – Prisoners have a constitutional right to adequate medical & mental healthcare; inadequate medical or mental health care can constitute cruel & unusual punishment in violation of the 8th Amendment. See attached.

Opposition [Doc. # 40], Ex. 3. Additionally, section G of the form states "refused to answer[.]" *Id.* Rowe has also included his additional December 12, 2006, statement:

I have had allergy symptoms majority of my life, water[y] eyes, runny nose, stuffy nose, sneezing, breaking out, breathing difficulties. In 2000, [I] was tested in Corcoran State Prison's ACH by medical staffs, and was told that [I] have the allergies. The symptoms [I] was having had got worse so [I] wanted to get checked out to see what was wrong with me. And found out it was allergies all along. Butt as seen on this 602 appeal [I] am being denied treatment, and appropriate attention, by Corcoran State Prison medical staffs.

*Id.* The parties have both provided a copy of CDC Form 695, which states:

This appeal constitutes an abuse of the appeal process pursuant to CCR 3084.4. Refusal to interview or cooperate with reviewer shall result in cancellation of the appeal per CCR 3084.4(d).

Your appeal is cancelled for failure to cooperate – CCR 3084.4.

Declaration of Reager [Doc. # 38], Ex. B; Opposition [Doc. # 40], Ex. 3.

On July 15, 2008, the court found Rowe had stated a claim against Defendants Montoya and Hasadsri. On October 16, 2008, the court ordered the United States Marshal Service to serve Defendants Montoya and Hasadsri.

On November 24, 2008, this matter was reassigned to this Court.

On October 10, 2009, Rowe filed a Dispositive Motion [Doc. # 36]. Rowe's Dispositive Motion discusses his settlement position and requests that, if a settlement is not reached, this matter be set for a jury trial.

On October 13, 2009, Defendants filed a Motion to Dismiss for Failure to Exhaust Administrative Remedies or, in the Alternative, for Summary Judgment [Doc. # 37].

*Motion to Dismiss for Failure to Exhaust Administrative Remedies*

Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust the administrative remedies available to them. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, Congress replaced this "general rule of non-exhaustion," with a "general rule of exhaustion" for all prisoner suits based on federal law. *Porter v. Nussle*, 534 U.S. 516, 525 n. 4, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Indeed, prisoners are required to exhaust administrative remedies before bringing suit under 42 U.S.C. § 1983:

No action shall be brought with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Exhaustion in cases subject to §1997e is mandatory. *Porter*, 534 U.S. at 524, 122 S.Ct. at 983; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Further, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Moreover, futility or other exceptions to the exhaustion requirement do not apply. *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001)

Exhaustion is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). A defendant bears the burden of raising and proving the absence of exhaustion. *Wyatt*, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. *Id.* at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988), *quotation omitted*. Further, a plaintiff's allegations of exhaustion are not presumed to be true. *Ritza*, 837 F.2d at 368-69. Additionally, the Ninth Circuit has determined that the claims must be exhausted before filing suit. *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (permitting exhaustion *pendente lite* will inevitably undermine them).

Defendants point out that, in his SAC, Rowe checked the box (Section II(C)) admitting that he did not complete the appeal process prior to filing the action. SAC, p. 3. Indeed, Rowe states that the "602 appeal was denied and cancel[led] so it wouldn't go further to higher authorities." *Id.* Defendants assert that, during discovery, Rowe was asked to produce the documents showing that he had exhausted his administrative remedies. According to the 602 appeal, on December 4, 2006, Hasadsri interviewed Rowe and tried to examine him but Rowe "refused to be examined" by Hasadsri. Opposition [Doc. # 40], Ex. 3. Rowe's 602 appeal was thereafter dismissed for "refusal to interview or cooperate with"

the reviewer. Declaration of Reager [Doc. # 38], Ex. B; Opposition [Doc. # 40], Ex. 3. Defendants point out that Rowe did not appeal the rejection of his claim or assert that he would submit to an examination so that the appeal process could continue.

Additionally, Defendants point out that the subject of Rowe's appeal was the allegation that Nurse Montoya had refused to refill his prescriptions – Rowe has not presented a 602 appeal with regard to any alleged acts or omissions by Hasadsri.

The State of California, through the California Department of Corrections ("CDCR"), provides its prisoners and parolees with the right to appeal administratively "any department decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. Tit. 15, § 3084.1(a). "An appellant must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision." Cal. Code Regs. Tit. 15, § 3084.6(c).

The CDCR inmate appeal process has several levels of appeal: informal resolution, formal written appeal on a CDCR Form 602, second level appeal to the institution level, and third level appeal. *See* Cal. Code Regs. Tit. 15, § 3084.5. The decision of the Director of CDCR at the Inmate Appeals Branch (for appeals received prior to August 2008) or the decision of the Office of Third Level Appeals - Health Care for medical appeals (for decisions received as of August 2008 or as of November 2008 for medical staff complaints) constitutes exhaustion of the administrative remedies available to an inmate within the Department of Corrections and Rehabilitation.

As to Montoya, Rowe has not pursued to completion any grievances/appeals relating to his claims. Rather, the documents submitted by the parties establish that Rowe's appeal was cancelled because of Rowe's lack of cooperation. As to Hasadsri, the documents submitted by the parties indicate that Rowe did not pursue any administrative appeal as to any alleged acts or omissions by Hasadsri. Rowe asserts, however, that he did file an inmate 602 appeal on Hasadsri, but that it was never "returned, answered, and evidently trashed." Opposition [Doc. # 40], p. 4. Rowe has submitted documents to show the defects of the appeal process. *See* Opposition [Doc. # 40], Ex. 2, California Prison Focus Survey ("Having

interviewed numerous prisoners at your prison, it is apparent to us that the 602 appeals process is not working. It seems that the appeals most often fail at the informal level due to lost or unanswered appeals.").

Rowe's opposition clearly acknowledges that Rowe did not further pursue an inmate 602 appeal after cancellation. *See* Opposition [Doc. # 40], p. 3. Rowe asserts that, because of the institution's cancellation of his appeal, he filed a § 1983 action. Defendants point out, however, that to the extent that Rowe denies that he refused to cooperate, Rowe could have appealed the decision to either the Second Level or the Director's Level and provided evidence that he was willing to consent to an interview and medical examination. Defendants also assert that, if an appeal regarding Hasadsri was lost or not returned, Rowe could have bypassed the informal level appeal and submitted the appeal to the First Level of the formal appeals process.

The Court also considers, however, that Defendants have not submitted an affidavit to establish that a search of records, e.g., the Inmate/Parolee Appeals Tracking System, was conducted and failed to show that Rowe pursued a grievance/appeal to completion. Additionally, Defendants have not addressed Rowe's assertion that the appeal process is flawed.[1] Nonetheless, the Court finds it appropriate to place significant weight on Rowe's acknowledgment that he did not pursue the grievance/appeal process to completion as to Montoya and his failure to assert that he made any effort to bypass the informal level appeal as to Hasadsri.[2] The Court finds Defendants have established the Rowe has failed to exhaust

---

[1]The Court notes that the California Prison Focus Survey indicates that the alleged flaws are at the informal level.

[2]The United States Supreme Court has cautioned that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth*, 532 U.S. at 741 n. 6; *see also Porter*, 534 U.S. at 524 ("[E]xhaustion in cases covered by § 1997e(a) is now mandatory. All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"). In this case, prison officials unquestionably had the authority to act on Rowe's administrative appeal and to provide some form of relief. *See Booth*, 532 U.S. at 736 n. 4, 121 S.Ct. 1819 (suggesting that where prison officials lack authority "to provide any relief or to take any

his claims. *See e.g., Chelette v.. Harris*, 229 F.3d 684, 688 (8th Cir.2000) (concluding that section 1997e(a) does not permit the court to consider an inmate's subjective beliefs in determining whether administrative procedures are "available"); *Jones v. Smith*, 266 F.3d 399, 399 (6th Cir.2001) (concluding that dismissal for failure to exhaust was proper because the plaintiff failed to allege that the prison official who refused to provide a grievance form was the only source of those forms or that plaintiff made other attempts to obtain a form or file a grievance without a form). Dismissal is appropriate.

As previously stated, "[a]n appellant must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision." Cal. Code Regs. Tit. 15, § 3084.6(c). In other words, Rowe's time for filing an administrative grievance has lapsed. Where a prisoner-plaintiff fails to exhaust administrative remedies, and the time for filing an administrative grievance has lapsed, a procedural default results. *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995). In *Marsh*, the Fifth Circuit Court of Appeals stated:

> Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirements by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies.

53 F.3d at 710. While *Marsh* addressed section 1997e prior to the enactment of the Prison Litigation Reform Act of 1995, Congress's enactment of a more restrictive statute does not permit circumvention under its less restrictive predecessor. *See Booth*, 532 U.S. at 741 ("obviously broader exhaustion requirement" intended by Congress).

Prior to the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), Ninth Circuit law directed the district court to dismiss a complaint without prejudice to allow the prisoner a chance to exhaust his administrative remedies. *Wyatt*, 315 F.3d at 1120 ("If the district court concludes that the prisoner has not

action whatsoever in response to a complaint," leaving the inmate "[w]ithout the possibility of relief," there might be "nothing to exhaust"). Rowe has not shown that he was foreclosed from pursuing review.

exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."); *see also McKinney v. Carey*, 311 F.3d at 1198, 1199-1200 (9th Cir. 2002). However, *Woodford* now forecloses any untimely exhaustion. The exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 126 S.Ct. at 2382. Proper exhaustion requires compliance with an agency's deadlines and other critical procedural rules. *Id*. at 2386; *see e.g., Janoe v. Garcia*, 2007 WL 1110914, at *8-9 (S.D.Cal. March 29, 2007) (dismissing Complaint with prejudice where a prisoner did not pursue the three-step formal review process, and had no time to exhaust); *Regan v. Frank*, 2007 WL 106537, at *4-5 (D.Haw .Jan.9, 2007) (dismissing plaintiff's claims with prejudice for failure to timely exhaust administrative remedies as required under 42 U.S.C. § 1997e(a) prior to filing suit). The CDCR administrative appeals process requires that prisoner administrative appeals be submitted within fifteen days of receiving an adverse determination. Rowe did not pursue further appeal remedies as to Montoya after being advised that the appeal had been cancelled. Further, Rowe did not attempt to bypass the informal appeal after not receiving any response to his appeal regarding conduct/omissions of Hasadsri. Rowe did not exhaust his administrative remedies. Under *Woodford*, it is impossible for Rowe to cure this defect. Therefore, the dismissal based upon failure to exhaust is with prejudice.

*Motion for Summary Judgment*[3]

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The moving party has the initial responsibility

---

[3]Alternatively, Defendants request that summary judgment be granted in their favor. Although the Court has determined that Defendants have sustained their burden in establishing that Rowe has failed to exhaust his administrative remedies, the Court finds it appropriate to address Defendants' alternate argument.

of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510, internal quotes omitted. The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-23. In opposing summary judgment, a plaintiff is not entitled to rely on the allegations of his complaint, Fed.R.Civ.P. 56(e), or upon conclusory allegations in affidavits. *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992). Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The dispute over material facts must be genuine. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial. *Id.* Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511. However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255. Further, in seeking to establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in his favor; it is sufficient that "the claimed factual dispute be shown to require a jury or

judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d 626, 631 (9th Cir. 1987).

Additionally, the Court is only to consider admissible evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (declarations and other evidence that would not be admissible may be stricken).

A claim of inadequate medical care constitute cruel and unusual punishment when the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official violates the Eighth Amendment only when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). First, the alleged constitutional deprivation must be, "objectively, 'sufficiently serious,'" in that the official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* 511 U.S. at 834, 114 S. Ct. at 1977, *quoting Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Second, the prison official must have a "sufficiently culpable state of mind," such that he acts with "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977, *quoting Wilson*, 501 U.S. at 302-303, 111 S.Ct. at 2326. This sufficiently culpable state of mind entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 837. The United States Supreme Court has established a subjective test for the deliberate indifference inquiry:

> [T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.,* 511 U.S. at 837. A plaintiff "need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* 511 U.S. at 842, 114 S.Ct. at 1981. Moreover, the indifference to the inmate's medical needs must be substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment

between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. *Estelle v. Gamble*, 429 U.S. at 105-06; *Wood v. Housewright,* 900 F.2d 1332, 1334 (9th Cir. 1990); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Ninth Circuit has stated that a "serious" medical need exists if the failure to treat a prisoner's condition "could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Indications that a prisoner has a serious need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. *See, e.g., Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir.1990) (citing cases); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir.1989). *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir.1992), *overruled on other grounds*. The Court also considers whether a plaintiff can establish more than one isolated instance of neglect. *Wood*, 900 F.2d at 1334 (Ninth Circuit looks at facts for substantial indifference in individual case, indicating more than mere negligence or isolated occurrences of neglect). Moreover, a showing of medical malpractice or negligence does not establish a constitutional deprivation or deliberate indifference under the Eighth Amendment. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004); *Wood*, 900 F.2d at 1334.

In this case, Rowe asserts that Montoya refused to refill his prescriptions on October 11, 2006. Defendants, in their Motion for Summary Judgment, have not provided any evidence to dispute this. However, the question is whether this is a material fact. Rowe has not presented any evidence that Montoya's actions were anything other than an isolated incident. Further, although Rowe has presented some literature regarding allergies, he has

not provided any documentation that his allergies constituted a serious medical need. Indeed, Rowe has not provided any evidence that the symptoms complained of by him (e.g., watery eyes, breaking out, itching, runny nose, sneezing, and stuffy nose, difficulty breathing) are not routine and require medical treatment. *See e.g., Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988) (expert medical opinion testimony is necessary to establish deliberate indifference in cases involving complex medical issues). Additionally, Rowe has not provided any evidence that Montoya knew of any particular medical issues in Rowe's case that would cause his allergies to be any different than those regularly experienced by the average person. Moreover, Rowe has not provided any evidence that Montoya was even authorized, as a non-physician, to order prescription medications for patients. Similarly, Rowe has not provided any evidence to establish that he suffered any injury as a result of Montoya's actions as opposed to the normal symptoms he experienced as a result of his allergies.

Rowe also asserts that Hasadsri had previously examined Rowe and denied him treatment. Rowe asserts that Hasadsri had access to his medical records and that Hasadsri was responsible for Rowe's treatment and care. Rowe has not provided any evidence to support this conclusory allegation. Moreover, the CDC 602 form provided by Rowe indicates that Hasadsri stated that "it is the policy and procedure of CDCR that the I/M is seen by yard RN first (for a non life threatening condition). Today you refused to be examined by me." Opposition, Ex. 3. Rowe has not provided any evidence to establish that Hasadsri knew of any risk of harm to Rowe or that Hasadsri disregarded any such risks resulting in injury to Rowe.

The Court finds that there is no issue of material fact in dispute. Summary judgment in favor of Defendants is appropriate. The Court having previously determined that Rowe failed to exhaust his administrative remedies, however, the Court will dismiss the action.

*Plaintiff's Dispositive Motion*

Rowe's Dispositive Motion discusses his settlement position and requests that, if a

settlement is not reached, this matter be set for a jury trial. Because the Court has found dismissal is appropriate, the Court will deny Plaintiff's motion.

Accordingly, IT IS ORDERED:

1.      Plaintiff's Dispositive Motion [Doc. # 36] is DENIED.

2.      Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies or, in the Alternative, for Summary Judgment [Doc. # 37] is GRANTED.

3.      This matter is DISMISSED WITH PREJUDICE for failure to exhaust administrative remedies.

4.      The Clerk of the Court shall enter judgment and shall then close its file in this matter.

DATED this 24th day of February, 2010.


_____
Cindy K. Jorgenson
United States District Judge